156 So. 159

## STATE v. HATTAWAY.

### No. 32962.

July 2, 1934.

Harris Gagne, of Houma, for appellant.

G. L. Porterie, Atty. Gen., and James O'Connor, Asst. Atty. Gen. (J. A. O. Coignet, Dist. Atty., of Thibodaux, and James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

ODOM, Justice.

Defendant was indicted for manslaughter, convicted as charged, and sentenced to hard labor. We find four bills of exception in the record, one to the refusal of the trial judge to sustain a challenge of one of the jurors for cause, one to the refusal of the court to give a requested special charge, one to the overruling of a motion for a new trial, and another reserved to the refusal of the trial court to grant a continuance.

Reuben Elster, on his voir dire examination, admitted that he had known the deceased and his family for a number of years and that he "classified" them as his friends. He said, however, that there was no intimate friendship between him and them, and stated that, if accepted as a juror, he could and would disregard the fact of his friendly relationships with them and render a verdict

according to the evidence and the law as given in charge by the court, just as he would if deceased and his family had been total strangers to him.

Article 351 of the Code of Criminal Procedure sets out the following as one of the causes for which a juror may be challenged: "That the relations, whether by blood, marriage, employment, friendship or enmity, between the juror and the accused, or between the juror and the person injured, are such that it must be reasonably believed that they would influence the juror in coming to a verdict."

■ The mere fact that the juror classed the deceased as one of his friends was no ground for excusing him. A juror may be challenged for cause only in case the friendly relations between him and the party injured or killed are such that it must reasonably be believed that such relations would influence the juror in coming to a verdict. Some friendships are purely casual; others are close, intimate, and of long standing. It is conceivable that two persons might be so linked together in friendship that either would so resent an injury to the other as to create a feeling of resentment and prejudice against the one causing the injury or death. A disclosure of such feeling between a prospective juror and the person injured or killed by the defendant would afford ground for challenging the juror under article 351 of the Code, because by reason of such feelings it must reasonably be believed that they would influence the juror in coming to a verdict. No such relations being shown to exist in this case, the judge properly refused to sustain the challenge.

Counsel for defendant cites the case of State v. Joiner, 163 La. 609, 112 So. 503, in support of his argument on this point. In that case the trial judge refused to sustain defendant's challenge of a juror, and this court reversed the verdict and sentence. But there the juror admitted that he was an intimate friend, not only of the deceased, but of the state's witness, Murray, and that he had talked to the witness Murray, who had told him the facts of the case from which he had formed an opinion which would require evidence to change. The court based its ruling not alone on the feeling of friendship which existed between the juror and the deceased, but on that plus the fact that the juror was also a friend of the witness with whom he had talked and learned the facts upon which he had formed an opinion. Counsel cite also State v. Jackson, 37 La. Ann. 468. In that case the juror said on his voir dire examination that he had heard all the facts and circumstances of the killing just after it was done, had formed and expressed an opinion which was against the accused, and that "deceased was a close personal friend of his." He was challenged for cause and the challenge was overruled. The verdict was reversed. In the Jackson Case as in the Joiner Case, the court did not rest its ruling on the bare fact that there was feeling of friendship on the part of the juror for the deceased. We find no merit in this bill.

■ Counsel for defendant requested the court to give the following charge to the jury:

"In every charge of manslaughter, the crime of involuntary homicide shall be deemed to be included and shall be a responsible (responsive) verdict under the said charge of manslaughter."

The court correctly refused to give the charge. Involuntary homicide is a distinct crime denounced by Act No. 64 of 1930, p. 142, and is defined by that act to be the killing of a person "by operation or use of any vehicle in a grossly negligent or grossly reckless manner, but not wilfully or wantonly." Section 1.

By the terms of said act the district attorney may charge persons who cause death by the grossly negligent use of a vehicle with the crime of manslaughter under existing manslaughter laws, and, where death is caused in this manner, and a charge of manslaughter is made, the crime of involuntary homicide shall be deemed to be included in the charge of manslaughter. In this case death was not caused by the negligent use of a vehicle, and therefore the crime of involuntary homicide was not included within the charge of manslaughter brought by the state against the defendant. This bill, like the other, is without merit.

There is another bill, however, which presents a more serious question. Prior to the date of the trial, counsel for defendant presented an application to the court for an order to have summoned three witnesses who resided outside the parish. He made the proper showing to have these witnesses summoned, and the order was granted. The name of one of the witnesses was set out in the application as Harvey Afford, who resided in Sabine parish. The name was entered on the witness record by the clerk as H. Afford, and the clerk issued a subpœna for H. Afford. The correct name of the witness was Harvey Alford and not Harvey Afford. The officer to whom the subpœna was sent for service failed to find a person named H. Afford, but did find

one whose name was H. Alford and served the subpœna on him. H. Alford was the person wanted, but he failed to appear on the day of trial, presumably because the name was incorrectly spelled. Defendant moved for a continuance on the ground that this was a material witness and the only one by whom he could prove certain facts material and indispensable to his defense, and alleged that the presence of said witness could be procured at a trial on a subsequent date. The court refused the continuance for the reasons as stated by him in his per curiam to this bill, "there was no summons issued to H. Alford; there was a summons issued for H. Afford, which appears to have been served on H. Alford."

■■ An accused person who has taken all legal precautions and used reasonable diligence to procure his witnesses is entitled to compulsory process to procure their attendance, and this includes witnesses from other parishes. Code of Criminal Procedure, title 14, arts. 144–152, inclusive. The right of compulsory process is predicated upon the exercise of due diligence. See cases cited under article 145, Dart's Annotated Codes. We infer from what the judge said that he thought the defendant had not exercised due diligence in that he had failed to have a subpœna issued for Harvey or H. Alford, who was the witness wanted.

■■ We think it cannot be said that this defendant did not use due diligence in this case. Several days prior to the date on which the case was set for trial application was made for an order to summon a witness whose name as stated in the application was Harvey Afford. The correct name of the witness wanted, it seems, was Harvey Alford, and the

clerk wrote the name on the witness book and issued the subpœna for H. Afford. But the subpœna was served by the sheriff on H. Alford, who was the witness wanted, so that the defendant got service on the witness desired. But that person failed to appear on the day set for trial, for what reason we are not informed, but presumably because his name was incorrectly spelled. The names Afford and Alford when written out have a similar appearance, and when pronounced they sound alike. The rule of "idem sonans" finds application in a case like this.

"The rule of idem sonans is that absolute accuracy in spelling names is not required in a legal document or proceedings either civil or criminal; that if the name, as spelled in the document, though different from the correct spelling thereof, conveys to the ear, when pronounced according to the commonly accepted methods, a sound practically identical with the correct name as commonly pronounced, the name thus given is a sufficient designation of the individual referred to, and no advantage can be taken of the clerical error." Words and Phrases, First Series, vol. 4, p. 3380.

Assuming that it is true as alleged by defendant that Harvey Alford was the only witness by whom he could prove facts material and indispensable to his defense, we think it was a hardship and an injustice to force him to trial without this witness under the circumstances disclosed. Counsel for the state in their brief state that the motion for continuance is fatally defective for not alleging "by a disclosure of facts and circumstances, a probability that the witness may be had at the time to which the trial is deferred," cit-

ing article 322 of the Code of Criminal Procedure.

We cannot agree with counsel. Defendant alleged in his motion for continuance that the presence of the witness could be procured at a trial on a subsequent date, and the facts and circumstances disclosed by the record are such as to leave no doubt that the witness could be procured at another trial. The sheriff was able to get service on him, and there seems to be no reason why service could not be made on a subsequent date, and, in case the witness refused to come to court voluntarily, compulsory process may be had to compel his attendance. We think the court should have granted a continuance.

For the reasons assigned, the verdict and sentence are set aside, and the case is remanded for retrial.