DOUCET, Justice Ad Hoc *.
Defendant Rickey Washington was charged by grand jury indictment with first degree murder, a violation of La.R.S. 14:30. Trial commenced on October 8,1979, and on October 12, 1979, the jury returned a verdict of guilty of first degree murder. A penalty hearing was held and, after deliberation, the jury was unable to unanimously agree upon a sentence recommendation. In accordance with the provisions of Code of Criminal Procedure Article 905.8, the trial judge, on October 29, 1979, imposed a sentence of life imprisonment, without benefit of parole, probation or suspension of sentence. Following sentencing, defendant filed a “Motion to Determine Effect of Appeal” and sought a Writ of Certiorari to review the trial court’s denial of the motion. The Louisiana Supreme Court granted defendant’s application for certiorari and rendered its opinion on the issue on February 6,1980, holding that the state may not seek the death penalty on retrial of a capital offense in cases where the defendant received a life sentence in the first prosecution. State v. Washington, 380 So.2d 64 (La.1980). Defendant is now appealing his conviction.
STATEMENT OF FACT
In the early morning hours, at approximately 1:00 A.M., on February 1,1979, Grady Haynes, owner and live-in manager of the YQ Grocery, located on the Cooper Road area of Shreveport, Caddo Parish, Louisiana, was shot to death behind the counter of his store. He was shot one time in the back of the head with a .32 caliber hand gun.
The store had been constructed so that the area of Mr. Hayne’s cash register was enclosed in a chicken wire fence, which had a gate or door in it with a lock. The obvious purpose of this fenced enclosure was to keep the public away from the cash register and “behind the counter” area. The lock on this door was broken and the cash register drawer was open and various papers and receipts usually kept in the drawer were strewn on the floor in the area of the cash register. One of the papers, a receipt found on the floor beneath the register, bore the fingerprint of Ricky Washington, and also on the floor in this area was a package of KOOL cigarettes, which Defendant had said he was going to the store to get.
Ricky Washington was arrested, on February 1, 1979, and the Caddo Parish Grand Jury subsequently indicted Washington for the First Degree Murder of Grady Haynes.
When arrested, Washington gave the investigating officers a statement, denying any knowledge of or involvement in the incident. When confronted with the fingerprint evidence, he admitted having been present in the grocery store on the evening of the murder, but attempted to blame first one other person, then changed his story to blame someone else for the death. Washington never admitted any involvement in the crime.
Several days after the arrest, officers of the Shreveport Police Department went to Washington’s home, where he lived with his mother, and conducted a search for a weapon. Mrs. Dorothy Washington eventually produced a gun for the officers, which was *1141 subsequently examined and found to have been the murder weapon.
Numerous motions were filed by defense counsel and arguments heard on the motions.
A motion was filed for the appointment of a Sanity Commission, which motion was granted. After the report of the Sanity Commission was submitted, the Defendant was found to be capable of understanding the nature of the charges against him and able to help in the preparation of his defense.
A motion to suppress evidence was also filed and the trial court overruled the motion.
Motions for discovery were filed, and the trial court ruled partly in favor of Defendant. Of particular interest was a discovery request for the criminal records, “rap sheets,” of virtually all of the state’s witnesses. The state supplied one such rap sheet and the trial court subsequently denied Defendant’s request for the other rap sheets.
Washington was brought to trial on the charge of First Degree Murder on October 8, 1979. The jury unanimously convicted him of this charge but was unable to unanimously agree upon a sentence recommendation. In accordance with the provisions of Code of Criminal Procedure Article 905.8, the trial judge, on October 29, 1979, imposed a sentence of life imprisonment, without benefit of parole, probation, or suspension of sentence.
Defendant first filed a “Motion to Determine Effect of Appeal” which was denied by the trial court. On the Writ of Certiora-ri to this Court it was held that the State may not seek the death penalty on retrial of a capital offense in cases where the Defendant received a life sentence in the first prosecution. State v. Ricky Washington, 380 So.2d 64.
After trial there was a recantation of a statement made to the prosecutor by Frank Wells, the only eyewitness to the event. Defendant moved for a new trial and the motion was denied.
Defendant perfected his appeal of this conviction and cited twelve (12) assignments of error. For the purpose of this discussion, the numbers assigned to the errors by Defendant, while not chronological, shall be used.
ASSIGNMENT OF ERROR NUMBER 1:
Defense counsel urges that the trial court committed reversible error by denying Defendant’s Motion to Suppress Inculpatory Statements.
The original motion filed by defense counsel on June 6, 1979, was to suppress what defense considered to be inculpatory statements made by the Defendant on February 1, (2 statements), February 2 and February 3,1979, on the grounds that these statements were inadmissible into evidence because the statements were not freely and voluntarily given, and/or without the Defendant having been properly advised of his right to remain silent and to have counsel appointed, and/or without a sufficient understanding of his rights in order to make an intelligent waiver of those rights. A supplemental motion to suppress these statements added as reasons to suppress, that the statements were obtained through the exploitation of an illegal arrest, made without probable cause.
One of the arresting officers, Detective Foster, testified that he and Detective Pittman had gone to Washington’s home in response to a telephone call from the Defendant’s mother advising the officers that the Defendant was at home. When Washington came from the back of the house, Detective Foster testified that he advised Washington that he was under arrest, put handcuffs on him, put him in the car and took him to their office. Detective Foster did not recall giving Washington his Miranda warnings at that time, but testified that neither he nor Detective Pittman attempted to question the Defendant during the ride to their office. Both officers testified that Washington appeared to be intoxicated, but not so much so that he did not understand what was being said to him. Washington asked the officers what he was arrested for and they told him the murder of Grady *1142 Haynes, to which the Defendant replied that he had not seen Grady Haynes for a long time.
After arriving at the detective office, Washington was advised of his rights by Detectives Pittman and Eason, and Washington signed the rights card. Following the rights advisement, and in response to questions asked by Detective Eason, Defendant told the officers that the last time he had been in Haynes’ store was on January 26, 1979 and that he had never been behind the counter. Detective Eason testified that these responses were articulated in a conversational manner, not simply yes or no answers to questioning.
On February 2, 1979, according to the testimony of Detective Nichols and Nixon, the Defendant was again advised of his Miranda rights and Defendant again signed the Miranda card. Two statements were made, one at 7:25 A.M. and a second approximately an hour later. The first, brief statement denied all knowledge of the incident. Defendant advised Detective Nichols that he had counsel, a Mr. Weinstein, and said, in response to the question of whether he wanted Mr. Weinstein present, “No, sir, I want to tell you about it.” The Defendant then gave a narrative account of the happenings of the night of the killing. Washington told the police that three other people had gone into the store while he remained outside and that he had seen Timothy Johnson shoot Grady Haynes. Defendant said that he then went into the store, went behind the counter and took $20.00 from the cash register. The detectives had told Washington about the fingerprints before this narrative.
On February 3, 1979, Washington was again read his Miranda rights and again signed the card in the presence of Detectives Lindsey and Olds of the Shreveport Police Department, at about 8:30 A.M., on that date. Some questions were asked, but later in the day, at about 1:30 P.M. Detectives Lindsey and Olds were advised by the city jailer that Washington wished to speak to them again. The detectives went to the city jail and again read Washington his rights. After that, Washington discussed the case again with the detectives. This time Washington indicated that one Frank Wells was the person who shot Grady Haynes, with all other details much the same as the statement made on February 2, 1979.
At the Motion to Suppress these statements, Dr. Jay Pennington, a psychiatrist who had examined Ricky Washington for the purpose of the sanity hearing, testified about the mental capacity and intelligence of the Defendant, but his testimony was inconclusive as to the Defendant’s capacity to understand the Miranda warnings. Dr. Pennington testified that Defendant may not have understood the rights but that he could have understood them, although Dr. Pennington did finally testify that in his professional opinion Ricky Washington did not have the capacity to understand the meaning of the words of the Miranda warnings.
In any case where the voluntariness of a confession or inculpatory statement is at issue, the burden of proving the volun-tariness is on the state, and it must do so beyond a reasonable doubt. State v. Glover, 343 So.2d 118 (La.1977). Also, the State must prove that a Defendant’s mental defect did not vitiate the voluntary nature of such statements. State v. Coleman, 369 So.2d 1286 (La.1979).
The trial judge, after hearing extensive evidence, concluded that the Defendant’s statements were, beyond a reasonable doubt, given fully and voluntarily by the Defendant, after having been advised of his rights, which he understood, and that the waiver of those rights was intelligent; therefore, the statements could be admitted into evidence.
The trial court had the benefit of the testimony of the many police officers who advised Ricky Washington of his rights and then heard his statements. It also heard the testimony of the expert, Dr. Jay Pennington. The Court then ruled that Ricky Washington had voluntarily, willingly, and knowingly waived his right to remain silent.
*1143 The admissibility of inculpatory statements is in the first instance a question for the trial judge, and his conclusions on the credibility and weight of testimony relating the voluntariness of inculpatory statements will not be overturned unless they are not supported by the evidence. State v. Siegel, 366 So.2d 1358 (La.1978).
ASSIGNMENT OF ERROR NUMBER 2:
Defendant contends that the trial court committed reversible error in denying Defendant’s motion to suppress evidence (a gun) obtained during a search of Defendant’s house.
The hand gun was seized on February 6, 1979, five (5) days after the arrest of Defendant. The State does not contend that it had a valid search warrant, but relies on one of the exceptions to the search warrant requirement, that there was a valid consent of the search.
It is well settled in the jurisprudence of the United States and this State, that a search warrant is required unless one or more of the narrowly drawn exceptions to that requirement is present. A valid consent to search is just such an exception. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1979); State v. Mitchell, 360 So.2d 189 (La.1978).
In this case, Defendant’s mother, with whom he lived, did sign a consent form giving her consent to the search. Further, when the officers failed to find a weapon in their search, they asked Mrs. Washington if there was a weapon in the house. She replied in the affirmative. Mrs. Washington then went to a locked storage room and got the gun, which was enclosed in a plastic bag and gave it to the officers. Subsequent examination indicated that this gun was the one used to kill Grady Haynes.
While there is conflict in the testimony as to when the consent form was signed, it is uncontroverted that Mrs. Washington got the gun for the officers from its hiding place, after the officers had failed to find it themselves. This court does not encourage law enforcement officers to circumvent the warrant requirement, particularly in instances such as this where no valid reason existed for not obtaining a warrant, but holds that on the facts of this case, the trial judge, correctly found this search to have been freely and voluntarily consented to, based on that court’s consideration of the totality of all the circumstances. Schneck-loth, supra.
ASSIGNMENT OF ERROR NUMBER 3:
Defendant contends that the trial court erred in refusing to require the State to provide Defendant with records of arrests and convictions of State witnesses as requested by Defendant in his Motion for Discovery and Supplemental Motion for Discovery.
Defendant filed an omnibus discovery motion on April 23, 1979.
Defendant requests the Court to order the District Attorney to furnish to the Defendant records of arrests and convictions of all witnesses which the state intends to call to testify at trial. Defendant specifically pleads that a denial of this request would violate Defendant’s constitutional rights under Article 1, Section 2 of the Louisiana Constitution of 1974 and the Fourteenth Amendment to the United States Constitution.
Argument was had on this motion on July 9, 1979. The Court instructed Defendant to rephrase his discovery request as to Article 2:
THE COURT: Rather than ruling on it at this point, would you restrict your — I would direct you to rephrase your request for discovery, eliminating people from it who I really don’t believe that you want rap sheets on, or I certainly wouldn’t require the State to respond to, I don’t think, after the showing, of detectives, the coroner, people like that that you know you’re not looking for that kind of information on, anyway. If you will restrict your — rephrase your request, then we’ll see what the State responds and then we’ll give a ruling on it.
On July 13, 1979, Defendant filed a Supplemental Motion for Discovery, stating with particularity the persons whose rap *1144 sheets he was requesting, insofar as Defendant was able, the Court having previously denied his request for a list of the State’s witnesses:
Defendant requests the Court to order the District Attorney to furnish to the Defendant records of arrests and convictions of all witnesses, other than personnel from the Coroner’s office, law enforcement personnel, crime lab personnel and other similar witnesses testifying in their official capacity, the State intends to call to testify at trial, including, but not limited to the following particular witnesses: Frank Wells, Timmy Leroy Johnson, John Wayne Morgan, Felton Hall, James Morgan, Anthony Henry, Arnold Tillman, Elizabeth Duncan, Dorothy Washington, Elizabeth Jackson, Diane Dotie, Sarah Owens, and Charles Dotie. Defendant specifically requests that records of arrests and convictions be obtained from the FBI or other similar sources which provide records of arrests and convictions from other jurisdictions. Defendant specifically requests all records of arrests and convictions presently in the possession of the District Attorney and all which the District Attorney has a means to obtain, whether or not presently in his possession. Defendant further requests that the Court order District Attorney to file in these proceedings the reasons for his inability to obtain the requested records for any such witness.
On July 23, and 24 argument was heard on this motion, consolidated with other motions. The Court then ruled that the State was not required to furnish rap sheets.
Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) is the leading case on the prosecutor’s duty to furnish exculpatory materials to Defendant upon request. This duty placed on the State has been expanded and delineated in later cases, and is firmly grounded upon the due process rights of the Defendant.
This court, in State v. Harvey, 358 So.2d 1224 (La.1978) found that the state must “respond to a specific request of the defense by stating whether the state had knowledge or possession of the conviction records” and if so then the prosecutor must furnish them to defense or submit them to the court for determination as to whether the defense was entitled to them.
The trial court requested a narrowing of the request for rap sheets, which was done by defense counsel. The court then asked for a memorandum on the issue from both counsel, which both submitted. The court had ample opportunity to study both the request by defense counsel and this court’s ruling in State v. Harvey, 358 So.2d 1224 (La.1978). It was ascertained by the court that the state did not have in its possession any rap sheets except the one furnished to the defense and further that the state had no knowledge of any other rap sheets.
In Harvey, supra, this court required a specific request for prior convictions be made and that the state respond to the specific request of Defendant by stating whether or not the State had knowledge or possession of the requested records. The trial court followed the rule promulgated in Harvey, supra; therefore Assignment of Error Number 3 is without merit.
ASSIGNMENT OF ERROR NUMBER 4:
Defendant contends that the trial court erred in denying his Motion for Mistrial made at the end of the first day of voir dire, after an improper reference attributable to the State to charges of other crimes pending against the Defendant.
During the first day a venireman asked for clarification of the charges facing Defendant:
A. Let me ask — there is something in my mind has confused me right now. Is this subject being tried on one thing or two things? Is it first degree murder and armed robbery or just first degree murder?
Q The only charge before the jury, insofar as guilt or innocence of a crime, is first degree murder.
A. The reason that I was asking, that deal out there on the door shows it is first degree murder and armed robbery.
*1145 Q. That is a listing of the Clerk’s office which may have nothing to do with any case.
The question was asked in the presence of the entire venire.
To have been grounds for a mistrial, the reference, in accordance with C.Cr.P. Article 770(2) would have needed to be concerning another crime as to which evidence would not have been admissible.
Upon motion of a Defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
******
(2) Another crime committed or alleged to have been committed by the Defendant as to which evidence is not admissible.
In this case, evidence of the armed robbery would have been admissible as part of the res gestae. This court has held, on many occasions, that evidence of multiple crimes committed in a single course of conduct is admissible as res gestae at the trial of the accused for the commission of one or more, but not all of the crimes committed in his course of conduct. State v. Owens, 338 So.2d 645 (La.); State v. Curry, 325 So.2d 598 (La.1976).
Assignment of Error Number 4 is without merit.
ASSIGNMENT OF ERROR NUMBER 5:
Defendant submits that the trial court erred in denying Defendant’s challenge for cause to prospective juror Robert J. Jones.
After Mr. Robert J. Jones had indicated on voir dire some question as to the presumption of innocence. The trial court questioned the venireman closely and that Mr. Jones could accept the law from the court and apply it. Mr. Jones was peremptorily challenged by the Defendant and did not serve on the jury. However, all peremptory challenges were exhausted by Defendant, and so this issue is properly reviewable by this Court. State v. Monroe, 366 So.2d 1345 (La.1978).
The trial court is vested with broad discretion in ruling on a challenge for cause. This ruling will not be disturbed on appeal absent a showing of abuse of that discretion. Monroe, supra. There is no showing of abuse of that discretion and so Assignment of Error Number 5 is without merit.
ASSIGNMENT OF ERROR NUMBER 6:
Defendant submits that the .trial court erred in denying his motion for mistrial made during the testimony of the deputy coroner upon learning that the State failed to disclose medical reports requested by the Defendant in a pre-trial motion for discovery.
In response to the Defendant’s Motion for Discovery the state filed a one (1) page report of the Coroner. It failed, through oversight, to attach three (3) pages of the “medical notes” to the report. Defense counsel noticed the three (3) pages of the medical notes on the District Attorney’s desk during trial, and made a Motion for Mistrial based on the state’s failure to produce these notes in discovery. The trial judge gave defense counsel a recess from approximately 5:45 P.M. until 9:00 A.M. the following morning to study the medical notes, and counsel was clearly told if he could give reasons why more time was needed, such would be granted.
In his ruling on defense counsel’s Motion for Mistrial, the trial judge noted that he had offered defense counsel additional time to consult with medical experts of his own choosing; the medical notes in contention were given to defense counsel immediately following his Motion for Mistrial; and defense counsel did consult with the coroner who prepared the notes.
It is acknowledged by defense counsel that the trial judge’s offer of a continuance was one of the options available to him under La.C.Cr.P. Article 729.5, which provides the statutory sanctions for failure to comply with discovery. However, counsel states that such an offer is of little use in *1146 view of the fact that it was made at the close of the third day and beginning of the fourth day of trial. He claims he was forced to either proceed without further preparation, or to risk the prejudicial effect that an extended continuance would “certainly” have on a sequestered jury. Thus, counsel argues, he was required to cross examine an essential state witness without the preparation he was entitled to by law.
After reviewing that section of the record pertinent to this issue, it appears the failure by the State to include the medical notes with the coroners reports was a good faith omission. Defense counsel did not allege at trial, nor does he articulate in brief any reasons why Defendant was prejudiced by this good faith omission. It does not appear that Defendant was, in fact, prejudiced in any way.
For the reasons assigned above, we find this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 7:
Defendant argues that the trial court erred in allowing, over Defendant’s objection, prejudicial hearsay testimony into evidence during the testimony of State witness, Arnold Tillman, Jr.
The Defendant contends that Mr. Tillman’s testimony concerning the events of the evening of January 31, 1979 was hearsay. The following exchange took place at trial.
Q. Why did you happen to be in the area of this store around 9:00 P.M., on this particular night?
A. I was coming to the 0 & J Grocery.
Q. 0 & J?
A. Yes, sir.
Q. Where is that located?
A. Right across the street from the Y.Q. Grocery.
♦ * # * * *
Q. Mr. Tillman, what did you see the Defendant doing when you saw him there at that time?
A. When I seen him he was out — I seen him telling him to leave the place, the premises.
Q. You saw who. telling who?
A. Grady Haynes telling Ricky Washington to—
MR. GARRETT: (Interrupting) Your Honor, I object to hearsay. Apparently he is stating that he overheard something.
THE COURT: Any response?
MR. NESBITT: Yes, sir, I do have a response. I think considering the time limitations we are dealing with that it should be admissible at this time. I have other response I would prefer not to make in the jury’s presence out of all caution.
THE COURT: Is the statement offered for the truth of the statement or for the fact of an utterance?
MR. NESBITT: No, sir, for the fact of the utterance.
THE COURT: All right. I am going to overrule the objection. And I state to the jurors that the statement is being allowed, even though it is an exception, even though it is hearsay — that is a statement of someone else — for the truth of what was said, but simply that an utterance was made. And you are to attach to it no other significance.
MR. NESBITT: Thank you,'sir,
BY MR. NESBITT:
Q. Mr. Tillman, if I could ask you whatever the conversation was between Mr. Haynes and Mr. Washington that directed your attention to the Y.Q. Grocery?
A. Yes, sir.
Q. What did you see Mr. Haynes do?
A. Just — he was asking him out the door. I didn’t see no licks or nothing passed.
Q. Now, Mr. Haynes was asking who out?
A. Ricky Washington.
Q. All right. And about what time was this?
A. About nine.
MR. NESBITT: Thank you, sir. That is all.
*1147 The witness at no time repeated any words exchanged between the victim and the Defendant, but if he had, the repeated conversation would have been admissible so long as it was admitted only for the purpose of showing that a statement was made. A witness can, of course, testify to what he observed.
Further, the res gestae exception allows the admission of testimony concerning utterances made before, during, or after a crime.
Thus, Assignment of Error Number 7 is without merit.
ASSIGNMENT OF ERROR NUMBER 12:
The trial court erred in refusing to charge the jury with defendant’s “Requested Special Charge No. 2.”
Defense counsel requested the following special charge be given to the jurors:
The testimony of an accomplice or co-conspirator must be weighed with great care and be scrutinized closely, carefully and cautiously. This testimony which is subject to great suspicion, must be viewed with distrust and acted on only after due and careful deliberation.
The trial court declined to give this charge because: (1) the trial court was of the opinion the charge did not accurately state the law and, (2) the trial court was of the opinion the charge constituted a comment on the evidence.
Defense counsel contends that the trial court should instruct the jury to treat accomplice testimony with great caution when the state’s case relies on the uncorroborated testimony of a purported accomplice. Defense counsel concedes that if there is corroboration of the accomplice’s testimony, such an instruction is not required. State v. Murray, 375 So.2d 80 (La.1979).
The state presented evidence that Defendant’s fingerprint was found on a receipt which was found directly below the cash register on the floor, which receipt was normally kept in the cash register; that the accomplice heard the Defendant order a package of “Kool” cigarettes and that detectives found a package of Kool cigarettes on the floor near the victim. In addition, the gun which experts testified had fired the fatal shot was found at the home of the Defendant.
The charge as given to the jury was in pertinent part as follows:
It is your duty to determine the weight and credibility of the evidence. You may take into consideration the probability or improbability of the statements of the witnesses, their opportunity for knowledge of the facts to which they testify, their reliability in noting and remembering facts, their demeanor on the stand, the interest or lack of interest they may have shown in the case, and every circumstance surrounding the giving of their testimony which may aid you in weighing their statement.
If you believe that any witness in this case has willfully and deliberately testified falsely to any material fact for the purpose of deceiving you, then you are justified in disregarding the entire testimony of such witness as proving nothing and as not worthy of belief. You have the right to accept as true or reject as false’the testimony of any witness in whole or in part as you are impressed with his veracity.
We find that the charge given the jury on the credibility of the witness was adequate to convey to the jury the necessity of treating the accomplice’s testimony with caution. Since there was a great deal of evidence corroborating the witness’ allegations, it was not necessary for the court to instruct the jury to use “great caution” in considering his testimony.
ASSIGNMENT OF ERROR NUMBER 13:
Defense counsel contends that the trial court erred in denying Defendant’s Motion to Continue Hearing on Defendant’s Motion for a New Trial.
Defendant, prior to the commencement of the hearing on the Motion for New Trial, made an oral motion to continue the hearing due to the absence of an essential witness, Frank Wells, Jr. Wells was one of the key witnesses for the state at the Defend *1148 ant’s trial. It was Wells’ alleged recantation of his trial testimony that caused the Defendant to seek a new trial. Wells, however, did not appear at the hearing on the motion. Defense counsel did not discover until the time of the hearing that the Sheriff had been unsuccessful in serving Wells with the subpoena.
Although La.C.Cr.P. Article 707 provides for a Motion for Continuance to be in writing, this Court has held that where the occurrences that allegedly made the continuance necessary arose unexpectedly, and defense had no opportunity to prepare a written motion, then the trial judge’s denial of Defendant’s Motion for a Continuance was properly before this Court for review. State v. Parsley, 369 So.2d 1292 (La.1979). The circumstances of this case fall within the exception to the rule that a Motion for Continuance must be in writing, as in Parsley, supra. Therefore, the trial court’s ruling herein is properly before this court for review.
The Code of Criminal Procedure, Article 709 provides:
A Motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
Sub-paragraph (1) has been satisfied by Defendant. Attached to the Motion for New Trial was an affidavit of Frank Wells, Jr., disavowing his eyewitness account of the murder “as untrue and made only under the immediate threat of prosecution for events I held no responsibility for or to.”
A review of the testimony of Frank Wells, Jr., given at trial clearly demonstrates that his account of the events of the night of the offense was essential to the state’s efforts to prove Defendant guilty of First Degree Murder.
It does not appear that defense counsel satisfied Sub-paragraph (2) of Article 709. At the hearing, there was no showing of a probability that the witness would be available at the time to which the trial was deferred. The hearing on the Motion for New Trial had already been continued two or three times previously, due to the inability of the Sheriff to locate Wells and serve him with a subpoena. Defense attorney had apparently not uncovered any new information concerning Wells’ whereabouts since the last continuance was granted. Counsel did not come forth with any new information which would lead the court to believe he would be any more successful in locating Wells if the continuance was granted. In fact, defense counsel buttresses his argument for Assignment of Error Number 14 with the likelihood that Wells will not be available in the future.
From the limited information available in the record, it seems probable counsel for defense did satisfy the requirement of Article 709(3) that "due diligence be used in an effort to procure attendance of the witness.”
However, the decision to grant a continuance is placed in the discretion of the trial court and will not be distured absent an abuse of discretion. State v. Gordy, 380 So.2d 1347 (La.1980); State v. English, 367 So.2d 815 (La.1979).
Although sections (1) and (3) of Article 709 seem to have been satisfied, there still were no facts alleged in the motion, or produced at the hearing on the motion, showing a probability that the witness would be available to testify at some later date. Under these circumstances, it was not an abuse of discretion for the trial court to deny a motion for continuance. State v. Gordy, 380 So.2d 1347, 1354 (La.1980).
ASSIGNMENT OF ERROR NUMBER 14:
Defense counsel urges that the trial court erred in denying Defendant’s Motion for New Trial.
*1149 The basis of the Motion for New Trial was a statement made by Frank Wells, Jr., a key witness for the state, which Defense counsel urges is a recantation of Wells’ trial testimony. The text of the statement is as follows:
I Frank Wells do freely admit and attest that under the incomprehension, coercion, inducements, and/or threats, however, subtle or blatant; I did provide the Cad-do Parish District Attorney’s Office with inaccurate and incorrect information; concerning the shooting of one Grady Haynes on or about August 17, 1978; in or around the Cooper Road district, Shreveport, Louisiana. While my original statement made accusations against Ricky Washington, who was later convicted of the above mentioned shooting as First Degree Murder; I now retract and disavow my supposed eye-witness account, as untrue and made only under the immediate threat of prosecution for events I held no responsibility for or to. Having taken what I then considered the line of defense, which seemed in my best interest, but is now a far greater burden than I could then have imagined; I sincerely wish to unburden myself and the unjust and illegal sentence imposed upon Ricky Washington, as a result of my wrongful statement.
Signed: Frank Jr. Wells_
Frank Wells
SWORN TO AND SUBSCRIBED TO this August 6, 1980, at Caddo Correctional Institute, Keithville, La., before me, Notary Public, in and for the Parish of Cad-do.
Signed: Dennis E. McCray Signed: Notary Public s/ Georg G. Ester s/ Anthony Williams s/ Edward Tady s/ Sammy Ray
The trial court admitted the statement into evidence, but stated that no great weight would be given the statement, and that it was considered merely a recanting of a statement given to the District Attorney before trial, not of Wells’ trial testimony.
For Wells’ out-of-court statement to be admissible as an exception to the hearsay rule, two requirements must be satisfied:
(1) the declarant must be unavailable, and
(2) the statement must be against the declarant’s penal interest.
State v. Gilmore, 332 So.2d 789 (La.1976); and State v. Hudson, 361 So.2d 858 (La.1978)
It would appear the first requirement was satisfied in this case. In denying Defendant’s motion for continuance, the trial court ruled that the whereabouts of Frank Wells, Jr., was not known and there was no indication that he could be located in the future. However, the second requirement was not met. Wells did not implicate himself in the statement. In fact, he denies any responsibility for the crime.
Therefore, Wells’ out-of-court “recantation” was not admissible as grounds for a new trial.
For the reasons assigned defendant’s conviction and sentence are affirmed.
AFFIRMED.
DIXON, C. J., concurs.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs for the reasons assigned by CALOGERO, J.

 Judges Thomas J. Kliebert and Robert J. Klees of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Justices Calogero, Dennis and Watson.