437 So.2d 879 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Tracy Glenn CLARK, Defendant-Appellant.
No. 15465-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 1983.
Rehearing Denied September 29, 1983.
Writ Denied November 28, 1983.
*881 James L. Davis, Dist. Atty., Many and Abbott J. Reeves, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
James E. Franklin, Jr., Shreveport, for defendant-appellant.
Before HALL, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Tracy Glenn Clark appeals a conviction of aggravated rape and the resulting mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence after a bench trial. Finding no merit to the ten assignments of error, we affirm the conviction and the sentence.

CONTEXT FACTS
On September 10, 1980, the victim of this crime was at home with her three minor children. She was approximately nine months pregnant with her fourth child and had experienced false labor pains the night before. Her husband, an offshore worker away seven days at a time, had left that morning for work. At approximately 9:30 p.m., the victim received a phone call from an individual who identified himself as "Tracy" the son of John A. Clark, the defendant's father. The caller inquired as to whether or not the victim's husband was at home and was told by the victim that her husband would return shortly.
At approximately 2:00 a.m. on September 11, 1980, the victim, who was sleeping on a mattress on the floor of the living room of her mobile home, was awakened by a black male who put a gun to her head and told her to be quiet or be killed. The perpetrator of the crime then proceeded to rape the victim, who admitted that she did not physically resist the act for fear of endangering her life, as well as the lives of her unborn child and three daughters who were asleep in a bedroom. After the rape, the victim heard one of her children cry and went to the bedroom to check on the child. The black male followed her down the hall and stopped in a location near the bathroom where he could be observed by the victim in the light of the bathroom. Thereafter, he left via the door of the mobile home.
The victim then secured the mobile home, notified the police, and called her father-in-law who lived nearby. The victim was taken to her obstetrician for examination. The physician was furnished with a rape kit and certain vaginal swabs and washings were made. Also, slides and test tubes containing specimens were given to a deputy sheriff for transmittal to the Northwest Louisiana Criminalistic Laboratory in Shreveport. The investigation at the scene of the crime yielded no physical evidence other than a seminal stain on the bedsheet of the victim's bed. This sheet was also transmitted to the crime laboratory.
Based upon the information received from the victim regarding the earlier phone call, the DeSoto Parish deputies assembled five photographs obtained from a local high school yearbook which included a picture of the defendant and showed them to the victim later on the day of the rape. Upon viewing this photographic line up, the victim indicated that the defendant and one other individual resembled her attacker.
*882 While she was reasonably certain that the defendant was the perpetrator of the crime, she asked for a more recent photograph which showed more of the body to insure the correctness of her identification. Consequently, the deputies went to the home of the defendant where they photographed him in the yard. While the deputies were taking defendant's picture, the victim and her husband drove by, stopped and talked to one of the deputies who was present. A second photographic line up was assembled and shown to the victim. At this line up, the victim identified the defendant as her assailant. Based upon this identification, the defendant was arrested and thereafter placed in a physical line up where he and the other participants were asked to speak certain phrases. The victim again identified the defendant as the perpetrator of the crime.
Approximately two years later, the defendant, age nineteen at the time of the trial, was tried by bench trial and convicted of aggravated rape.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the defendant argues that the trial judge committed error in denying the motion to suppress photographs and the victim's out of court identification of the defendant prior to trial. Defendant strenuously contends that the various photographic and physical line ups were so suggestive as to lead the victim to identify the defendant as her attacker when she was in reality uncertain of the perpetrator's identity. Particularly because of the lack of physical evidence on the scene to connect the defendant with the crime, the defendant contends that the totality of the circumstances present in this case make the identification procedures utilized so suggestive as to render them violative of the defendant's due process rights because a substantial likelihood of an irreparable misidentification exists.
In determining the constitutionality of an out of court identification, several factors must be considered. First, the suggestiveness of the identification procedure itself must be evaluated. State v. Guillot, 353 So.2d 1005 (La.1977). In the instant case, the procedure utilized in formulating the pictorial and physical line ups was not suggestive. The pictures utilized do not bear identifying marks and the procedure used to present the physical line up was appropriate.
Next, it must be determined whether or not the pictures or the persons in the line up display the defendant so singularly that the witness' attention was focused on the defendant. While a strict identity of characteristics among the participants is not required, it is necessary that a sufficient resemblance be present to reasonably test the identification. State v. Guillot, supra; State v. Gray, 351 So.2d 448 (La.1977). This determination is made by examining the articulable features of the pictures or persons used. State v. Guillot, supra. A line up is unduly suggestive if a sufficient resemblance of characteristics and features of the individuals in the line up does not exist to reasonably test the identification. State v. Davis, 385 So.2d 193 (La.1980).
In the first pictorial line up, the participants meet all of the characteristics of an acceptable line up; they are all young black, clean shaven males who closely resemble each other. The second pictorial line up is somewhat less uniform in characteristics in that all of the participants, with the exception of the defendant, have some degree of facial hair. However, three only have faint traces of a mustache. One participant has a more apparent mustache and one has a heavier mustache as well as a goatee. Otherwise, the participants are markedly similar in appearance. Furthermore, the facial hair is not so abundant that it affects facial conformation or features. See State v. Gipson, 359 So.2d 87 (La.1978). We conclude from our inspection of the photographs that no impermissive suggestion resulted from the participants' facial hair. See State v. Brooks, 350 So.2d 1174 (La.1977). The same analysis is applicable to the physical line up conducted at the courthouse. While three of the participants in this line up had some facial hair, it was *883 not so abundant that it affected their facial conformation or features. The participants were otherwise similar in appearance. There was a sufficient identity of characteristics in each of the line ups to indicate reliability in the identification made therefrom. Thus, we conclude that no undue suggestion resulted and the identification procedure was not tainted by suggestive procedures or persons used in connection with these line ups.
The most serious issue raised in this assignment is whether or not the identification procedure utilized in this case is rendered impermissibly suggestive by the fact that the victim and her husband stopped at the home of the defendant while the officers were taking his picture in the yard. Defendant contends that this incident operated as a "show up" which aided the victim in identifying the defendant as a result of this one on one confrontation. One on one identification procedures are not favored. State v. Newman, 283 So.2d 756 (La.1973). A practice of allowing a victim to view an individual suspect singularly is not to be condoned nor is it to be taken lightly because of the potential for misidentification. However, while such a practice is not favored, whether or not an impermissibly suggestive one on one confrontation results in an impermissibly suggestive identification process depends on all of the circumstances. State v. Johnson, 333 So.2d 223 (La.1976). The victim testified that she and her husband simply stopped in their car to ask the officers a question on their way to town. The record of the hearing on the motion to suppress does not indicate that she was aware of what the officers were doing in the yard or that she specifically recalled seeing the defendant. Her testimony there is uncontradicted and unrefuted. We thus conclude that under these particular facts, that no one on one confrontation occurred. Consequently, this incident does not render the subsequent identification procedures tainted. Compare State v. Newman, supra.
Furthermore, assuming arguendo that this encounter rendered the identification procedure suggestive, this alone does not indicate a violation of the defendant's due process rights because it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Guillot, supra; Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1979). In Manson v. Brathwaite, the Supreme Court stated:
The factors to be considered are set out in [Neil v.] Biggers, 409 U.S. [188], at 199-200, 34 L.Ed.2d 401, 93 S.Ct. 375 [382]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. [97 S.Ct. at 2253.]
Thus, under the Manson test, even if an identification procedure is suggestive, an identification is admissible if the totality of the circumstances demonstrate that the identification is reliable. State v. Guillot, supra. Applying the Manson analysis to the instant case reveals the following:
1. The opportunity to view: The victim had an opportunity to clearly view her assailant moments after the rape when he followed her to the door of her girls' bedroom while she was tending to her child and she saw him for several seconds in the light of the bathroom. She testified that at this time she focused on his features and consciously sought to remember them.
2. The degree of attention: The victim was not a casual or passing observer, but was a victim whose attention, due to the nature of the crime, was riveted upon the perpetrator.
3. The accuracy of the description: While there was some discrepancy in the weight of the perpetrator of the crime in the initial description, her description otherwise reasonably matched that of the defendant. This discrepancy regarding *884 the defendant's weight was adequately explained by the fact that the victim was not knowledgeable concerning the weight of males. When she found out the weight of her husband, she accurately described the size of the defendant.
4. The witness' level of certainty: The victim was somewhat hesitant to positively identify the defendant at the first pictorial line up even though she strongly indicated that he might be the perpetrator. Thereafter, she was highly certain of her identification. The initial hesitancy was adequately explained by her unwillingness to make a positive identification without being absolutely sure. Her initial caution does not detract from her certainty but merely reinforces the positive identifications which she made at all future stages of the identification process, including the trial.
5. The time between the crime and the confrontation: All of the pre-trial identification procedures took place within a few days of the crime.
Weighing these indicia of reliability against even a suggestive identification process, it is clear that there was not a significant chance of misidentification in this case. Therefore, the defendant was not denied due process, and the trial court did not err in refusing to suppress the out of court identifications. A trial judge's determination on the admissibility of an identification is given great weight and will not be disturbed unless a preponderance of the evidence clearly mandates. State v. Brooks, supra. The evidence does not preponderate to require a reversal of the trial judge's ruling in this case.
Additionally, while the defendant has not raised as an assignment of error and in fact did not even object at the trial to the admissibility of the in court identification of the defendant by the victim, we simply note that the in court identification by the victim under the totality of the circumstances of this case is well supported by independent sources and is thereby reliable. State v. Gipson, supra.
Because there was no likelihood of misidentification in this case, defendant's due process rights were not violated.
Defendant additionally argues that the physical line up, which took place pre-indictment, should have been suppressed because he had no counsel present. Here, there is no evidence that defendant had retained or appointed counsel at the time of this physical line up or that any request for access to such counsel was made and denied. A defendant is not constitutionally entitled to have counsel present at pre-indictment procedures. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Vaughn, 378 So.2d 905 (La.1978); State v. Huckaby, 368 So.2d 1059 (La.1979). See also State v. Thomas, 406 So.2d 1325 (La.1981). Since defendant had no counsel at the time of the line up and requested none there has been no showing made that his rights were violated under either the United States or Louisiana constitutions.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends in connection with this assignment of error that the evidence presented is insufficient to support a conviction of aggravated rape in light of the testimony of the victim that she "voluntarily" submitted to the act after being threatened with the gun because of her advanced state of pregnancy and her fear for her safety and that of her children. Defendant contends that the evidence presented will, at best, only support a conviction of forcible rape.
La.R.S. 14:42 provided at the time of the offense:
Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or

*885 (2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
La.R.S. 14:42.1 provides:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than two nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.
The distinction between aggravated and forcible rape has been addressed in State v. Parish, 405 So.2d 1080 (La.1981). The Parish court determined that the legal definition of aggravated rape as defined in La.R.S. 14:42(2) is virtually identical to the definition of forcible rape because there is no essential difference between the specific results required by each crime definition. Both require that the victim be prevented from resisting the act by threat of great harm under circumstances where the victim reasonably believes that resistance would be futile. Forcible rape is merely a lesser degree of the crime of aggravated rape and is a responsive verdict to that crime. The only distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. However, the jury is authorized to subject a guilty defendant to more severe punishment by convicting him of aggravated rape rather than forcible rape. The court then went on to conclude that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, thereby assigning to the fact finder the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. The standard of appellate review in such cases is:
... whether any reasonable jury [fact finder], viewing all of the evidence, in the light most favorable to the prosecution could find beyond a reasonable doubt that the defendant ... [caused] the results required by both the aggravated and forcible rape statutes and that the degree of force employed warranted punishment in the greater, rather than lesser, degree... [405 So.2d at 1087] [Bracketed material added.]
Applying the above standard of review to the instant case, we conclude that the evidence viewed appropriately supports a finding of guilty of aggravated rape. The victim was awakened with a gun barrel held to her head and her life was threatened. Obviously, she was faced with a threat of great and immediate bodily harm accompanied by apparent power of execution. It is undisputed that an act of sexual intercourse occurred thereafter. It would certainly appear to a reasonable person, particularly a victim who was nine months pregnant with minor children in the home, that resistance of any sort might result in great bodily harm or death, not only to the victim but to innocent third parties. Clearly, upon these facts there was no lawful consent of the victim here to the act of sexual intercourse. A victim need not suffer physical harm to constitute the high degree of force necessary to support a conviction of aggravated rape. State v. Gaston, 412 So.2d 574 (La.1982). See also State v. Fletcher, 341 So.2d 340 (La.1976).
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 3, 5, and 7
These assignments of error address themselves to the defendant's contention that *886 the trial judge committed error in failing to grant a motion for continuance on the date of the trial due to the absence of a material witness and in failing to grant a new trial to reopen the case to enable the subpoenaing of this particular witness.
The motion for continuance was made orally on the day of the trial prior to the swearing of the first witness after it was discovered that a witness, Verner Scott, had not been located and served with a subpoena. While we note that a motion for continuance should be in writing, we conclude that it was appropriate in this instance for the trial court to consider an oral motion. See La.C.Cr.P. Art. 707; State v. Washington, 407 So.2d 1138 (La.1981). Therefore, we will review the propriety of the trial court's ruling. When the discovery was made, the trial court after issuing an instanter subpoena, ordered a short recess to attempt to determine the location of the witness. When the witness could not be located, the defendant moved for the continuance which was denied by the court after a hearing upon the trial judge's finding that it was not probable that the witness would be found at a later date under the circumstances shown.
Whether a refusal to grant a continuance is justified depends on the circumstances of the particular case, and a conviction will not be reversed absent a showing of specific prejudice caused by the denial of the continuance. State v. Simpson, 403 So.2d 1214 (La.1981).
La.C.Cr.P. Art. 709 which forms the basis for this motion provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
The allegations showing the necessity for the presence of this witness at trial were based on the fact that the victim's father-in-law had passed a black Monte Carlo parked on a different road from that on which the victim lived shortly after the rape. This car was approximately three miles from the victim's home and was occupied by what appeared to be a lone black female in the driver's seat. It was defendant's contention that Verner Scott owned a black Monte Carlo and had been seen driving that car in the vicinity of the victim's home shortly before the rape. In essence, defendant contended that Verner Scott, rather than the defendant, was the perpetrator of the crime. At the hearing on the motion, defendant produced a witness who testified that Verner Scott had been in the area some two weeks prior to trial; however, when this particular individual had attempted to locate Scott a few days prior to trial, he had been unable to do so. This witness stated that there was only a possibility of Scott's being located for purposes of testifying at a trial.
Our review of the record reveals that the subpoenas issued for the appearance of Scott were issued four days prior to trial pursuant to a letter written by defense counsel which gave no specific address for Scott but listed "General Delivery" in two different towns in two different parishes. This trial had been continued on other occasions over the two year period between the date of arrest and the commencement of trial. In connection with earlier trial dates, subpoena letters had been directed to the clerk containing numerous witnesses. Scott was not listed on any of the earlier requests for issuance of these subpoenas. At the hearing on the motion for the continuance no evidence or explanation regarding the reasons for the lateness of the request for the subpoenas for Scott was presented.
From the evidence presented, we conclude that the trial judge did not abuse his discretion in refusing to grant the motion *887 for continuance. There is no abuse of discretion in denying a motion for continuance where there are no facts produced at a hearing showing a probability that the missing witness will be available to testify at some later date. State v. Washington, supra. Furthermore, we conclude from our review of the record, that the record does not adequately reflect a showing that the defendant exercised due diligence in his efforts to procure the attendance of the witness at trial. See State v. Bertrand, 381 So.2d 489 (La.1980). It is clear from this record that defendant did not satisfy the requirements of Article 709 in order to obtain a continuance based upon the absence of a witness. No facts were shown revealing due diligence on behalf of the defendant to obtain the witness nor was there any reliable indication that the witness would likely be available at any time to which trial could be deferred. State v. Henderson, 337 So.2d 204 (La.1976). Our review additionally reveals that there was an insufficient showing made that Scott's presence would in any manner benefit the defendant's case. The testimony of the individuals who were acquainted with Scott indicates that he does not resemble the defendant. Thus, defendant's argument that the presence of this witness would cast a reasonable doubt upon the victim's identification is not supported by his own evidence. See State v. White, 389 So.2d 1300 (La. 1980).
Defendant additionally contends that La.C.Cr.P. Art. 709 is unconstitutional as applied to this case because it operates to deny him the right to compulsory process. The right to compulsory process is the right to demand subpoenas for witnesses and the right to have them served. State v. Mizell, 341 So.2d 385 (La.1976). It is a right which is embodied both in the federal and state constitutions as well as the statutory law of this state. U.S. Const.Amend. 6; La. Const. Art. 1, § 16 (1974); La.C.Cr.P. Art. 731. The constitutional right to compulsory process for the attendance of witnesses is not to be trifled with and must be enforced. State v. Mizell, supra; State v. Bickham, 208 La. 1026, 24 So.2d 65 (1945). However, the right to compulsory process to obtain the attendance of witnesses is predicated on the exercise of due diligence by the defendant. State v. Hattaway, 180 La. 12, 156 So. 159 (1934). It is incumbent upon the defendant to set forth facts which show due diligence. State v. Doty, 158 La. 842, 104 So. 736 (1925). Applying the aforementioned principles in pari materia, we conclude that this article is not unconstitutional nor is it unconstitutionally applied to this defendant. The requirement that the defendant meet the criteria of Article 709 does not deprive him of any constitutional rights and the criteria enumerated serve a rational and logical purpose. As stated in State v. Lockett, 332 So.2d 443 (La.1976):
The Articles of the Code referred to above [La.C.Cr.P. Arts. 707, 708, and 709] are not platitudes. Unless the standards set out there are adhered to, the trial of cases will be unduly and unexpectedly delayed, and the handling of court dockets will be hampered. When the Code's standards are complied with, however, the defendant is protected and there is little likelihood of prejudice to his case... [Bracketed material added.]
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends in this assignment of error that the trial judge committed error in imposing an unconstitutional sentence in that the mandatory statutory penalty imposed for aggravated rape is cruel, excessive, unusual and inhumane; and violates United States and Louisiana Constitutions. The constitutionality of this statute has been repeatedly upheld. State v. Talbert, 416 So.2d 97 (La.1982); State v. Campuzano, 404 So.2d 1217 (La.1981); State v. Prestridge, 399 So.2d 564 (La.1981).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
In this assignment of error, defendant contends that he was denied due process and a fair trial because of the destruction *888 of certain evidence due to the state's negligence. The thrust of defendant's argument is that had the evidence been properly preserved and available for testing, that it could have established his innocence. Defendant filed a motion to quash the indictment based on the destruction of this evidence. After a hearing, the trial court quashed the indictment and the State sought review. The Supreme Court reversed the trial court's ruling and returned the matter to the district court for trial. See State v. Clark, 414 So.2d 737 (La.1982). It was the holding of the Supreme Court that the defendant could still present evidence to the trier of fact to show the inconclusive nature of the tests performed at the crime lab after which the fact finder should be allowed to evaluate the testimony and evidence to determine what weight it should be given.
Defendant now contends that the trial judge failed to attach any weight whatsoever to the inconclusive nature of the medical evidence and the defendant's inability to conduct further tests. However, the trial court's express "reasons for judgment" indicate the contrary and reveal that the trial judge did in fact consider that evidence as a factor to be weighed in the ultimate determination of guilt. Even after considering the destruction of this evidence, the trial judge found that other evidence sufficiently established defendant's guilt beyond a reasonable doubt. Defendant's argument that had the trial judge given the appropriate weight and consideration to this lack of evidence, that this would have established a reasonable doubt which would have precluded defendant's conviction is not supported by the record.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends in this assignment of error that the trial court erred in failing to grant his motion for new trial. Because defendant has neither briefed nor argued this assignment of error, we deem it to be abandoned and do not consider it. State v. Carlisle, 315 So.2d 675 (La.1975).

ASSIGNMENT OF ERROR NO. 9
In this assignment of error, defendant contends that the trial court erred in denying the Motion in Arrest of Judgment thereby holding that the elements of aggravated rape had been proven when the witness testified that she voluntarily submitted to the act, in refusing the motion for continuance, and in holding that the penalty provisions of La.R.S. 14:42 are constitutional.
La.C.Cr.P. Art. 859 sets forth the grounds for arrest of judgment:
The court shall arrest the judgment only on one or more of the following grounds:
(1) The indictment is substantially defective, in that an essential averment is omitted;
(2) The offense charged is not punishable under a valid statute;
(3) The court is without jurisdiction of the case;
(4) The tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code;
(5) The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment;
(6) Double jeopardy, if not previously urged; or
(7) The prosecution was not timely instituted, if not previously urged.
(8) The prosecution was for a capital offense or for an offense punishable by life imprisonment, but was not instituted by a grand jury indictment.
Improper venue may not be urged by a motion in arrest of judgment.
Of the enumerated grounds in this article, only subsections (2) and (5) are possibly applicable to the instant case. The ground that the evidence is insufficient to support a conviction of aggravated rape is more properly raised in a bench trial by a motion for acquittal or by a motion for new trial. La.C.Cr.P. Arts. 778, 851. A trial judge's refusal to grant a continuance is not properly *889 raised by a motion in arrest of judgment. The unconstitutionality of the penalty provisions of the statute under which a defendant was convicted is properly raised under La.C.Cr.P. Art. 859(2). However, it is unnecessary that we specifically consider whether the trial court properly denied the motion in arrest of judgment on these three grounds because in connection with our discussion of other assignments of error, we have determined that defendant's identical arguments raised here again are without merit. Therefore, for the reasons assigned in connection with assignments of error 2, 3, 4, 5, 7, and 10, we conclude that the trial court properly denied the Motion in Arrest of Judgment.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 10
In connection with this assignment of error, the defendant argues that the trial court erred in finding that the law and the evidence supported a finding of guilty as charged and that the finding of guilty is contrary to the law and the evidence. Defendant argues that applying the rationale of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and viewing the evidence in the light most favorable to the prosecution reveals that the state failed to prove that the defendant perpetrated the alleged offense because the evidence shows that the victim could not identify her attacker. Additionally, defendant urges that the evidence, rather than proving that the defendant was the perpetrator of the crime, more reasonably shows that Verner Scott was the perpetrator.
Applying the Jackson v. Virginia standard of review, we conclude that the evidence shows that the victim was not uncertain in her identification. The identification of the victim is sufficient to convict the defendant of the crime if all other elements of the crime are proven. See State v. Gaston, supra. There was no reliable evidence presented that Verner Scott was the real perpetrator of the crime and defendant's alibi defense was subject to a credibility evaluation by the trier of fact.
Thus, the proof was sufficient to establish defendant as the perpetrator of the crime. There is no question but that sexual intercourse occurred with the victim. The victim testified that she was forced to submit because defendant threatened to kill her with a gun which he held to her head. Thus, a rational trier of fact viewing the evidence in the light most favorable to the prosecution could have concluded that the essential elements of the crime of aggravated rape were proven beyond a reasonable doubt.
This assignment of error is without merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.