485 So.2d 161 (1986)
STATE of Louisiana, Appellee,
v.
Eddie EVANS, Appellant.
No. 17592-KA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1986.
Writ Denied May 16, 1986.
*162 Jack Wright, Jr., Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James Allan Norris, Jr., Dist. Atty., Michael J. Fontenot, Asst. Dist. Atty., for appellee.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Chief Judge.
The defendant, Eddie Evans, was charged by bill of information with armed robbery in violation of LSA-R.S. 14:64 and attempted second degree murder in violation of LSA-R.S. 14:30.1, 14:27. After the defendant was found guilty as charged of armed robbery and guilty of the lesser included offense of aggravated battery in violation of LSA-R.S. 14:34, the trial court sentenced the defendant to serve 35 years at hard labor on the armed robbery charge and 3 years at hard labor on the aggravated battery charge, both sentences to run concurrently without benefit of parole, probation, or suspension of sentence.
The defendant has appealed contending that the trial court erred in denying his motion to suppress an out-of-court identification and inculpatory statements made *163 while in custody. Finding no merit to defendant's assignments of error, we affirm.
FACTS
At approximately 3:30 on the afternoon of October 25, 1984, Fran Brennan, a 78 year old male, was placing a tool box on the passenger side of the floorboard of his truck when he was grabbed from behind and held down by a black man with a knife. The man held the knife to Mr. Brennan's throat and told Mr. Brennan that he was going to cut him up or kill him if he did not give him his money. The man turned Mr. Brennan around and cut out his back pocket, cutting Mr. Brennan's buttocks and then taking his wallet. The man then grabbed the tool box and ran down the street. Mr. Brennan followed the man and observed him get into a beige, two-door Lincoln and drive off.
Shortly after the robbery, the defendant, driving a beige Lincoln, was involved in an auto accident. The defendant had run a red light in front of a police officer who had not yet been informed of the robbery. The officer pursued the defendant until the defendant wrecked his automobile. The defendant matched the description of the robbery suspect and was arrested, taken to the police station, and identified by Mr. Brennan. Shortly thereafter the defendant confessed to the commission of the robbery.
ASSIGNMENT OF ERROR NUMBER 1
By this assignment, defendant contends that the trial court erred in failing to suppress an out-of-court identification of the defendant.
After the commission of the crime, a vehicle matching the description given by the victim was involved in an accident while being pursued by a police officer as a result of a traffic violation. It was suspected that the person involved in the accident, the defendant, might also be involved in the armed robbery. Therefore, the defendant was transported to the Monroe Police Department and held in the detective's squad room. Subsequently, the victim, Mr. Brennan, was brought to the police department for a one-on-one identification of the defendant.
A defendant attempting to suppress an identification must prove two things: (1) that the identification was "suggestive," and (2) that there was a likelihood of misidentification in the identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983). If under the first prong of the analysis the court determines that the identification procedure was not impermissibly suggestive, the inquiry ends. If the court finds that the procedure used was suggestive, a separate inquiry must be made as to whether the suggestiveness created a substantial likelihood of irreparable misidentification. An identification will be admitted even though the confrontation procedure was suggestive if under the totality of the circumstances the identification is found to be reliable. Passman v. Blackburn, 652 F.2d 559 (5th Cir., 1981); State v. Davis, 409 So.2d 268 (La.1982); State v. Dauzat, 364 So.2d 1000 (La.1978): State v. Clark, supra.
The factors to be considered in evaluating the reliability of an identification were enumerated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and reaffirmed in Manson v. Brathwaite, supra. There are five factors to be considered in determining whether there is a likelihood of misidentification. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification.
The most serious issue raised in this assignment is whether or not the one-on-one identification procedure utilized was so impermissibly suggestive that it created a likelihood of misidentification.
One-on-one identification procedures are not favored. State v. Davis, supra, *164 State v. Newman, 283 So.2d 756 (La.1973); State v. McLeland, 456 So.2d 633 (La.App. 2d Cir.1984); State v. Clark, supra. The practice of allowing a victim to view an individual suspect singularly is not to be condoned nor is it to be taken lightly because of the potential for misidentification.
There can be no doubt that the procedure used in the present case was suggestive. Prior to seeing the defendant at the police station, the victim was told that they had arrested the person they believed to be the robber. Additionally, when the victim was brought into the police station, the defendant was the only black man in the room and the only person who was not a police officer. Therefore, we must determine whether the suggestiveness of the procedure created a likelihood of irreparable misidentification applying the five factors of Neil and Manson.
First, we consider the victim's opportunity to view the criminal at the time of the crime. Mr. Brennan was not facing the perpetrator when he was attacked and held down. However, Mr. Brennan testified that during the two to three minutes he was held down, he was able to turn his head and look "at him right dead in the face." Mr. Brennan also pursued the defendant on foot for about a block as the defendant fled the scene.
Second, we consider the victim's degree of attention. Undoubtably, during the commission of this crime Mr. Brennan's intention was focused directly upon the perpetrator.
Third, we consider the accuracy of the victim's prior description. Mr. Brennan testified that he did not recall giving a description prior to seeing the defendant in the police squad room. However, Officer Gay Davis of the Monroe Police Department testified that prior to taking Mr. Brennan to the police station Mr. Brennan had described the perpetrator as a black man wearing khaki colored coordinated pants and shirt and indicated that the left front pocket had a black tag on the front. The defendant, a black male, was wearing a beige jumpsuit which had a black tag on the left front pocket.
Fourth, we consider the victim's level of certainty demonstrated at the confrontation. When Mr. Brennan was first brought into the police squad room, he stood at the door and did not recognize the defendant. However, the defendant was asked to stand and face Mr. Brennan who put on his glasses and walked closer to the defendant. At that point, Mr. Brennan recognized the defendant as the perpetrator of the robbery.
Fifth, we consider the time between the crime and the confrontation. The record reflects that the confrontation took place approximately 30 to 45 minutes after the crime.
Although the identification procedure utilized in the present case was suggestive, we find that the totality of the circumstances indicate that the identification was reliable. Of particular note, the victim's prior description of the defendant's clothing matched what he was wearing and also the identification took place shortly after the commission of the crime. Therefore, we find no likelihood of misidentification and find no error in the trial court's denial of the motion to suppress the identification. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 2
By this assignment, defendant contends that the trial court erred in failing to suppress inculpatory statements made by the defendant. Defendant contends that his Fifth Amendment privilege against self-incrimination was violated because after the defendant was read his constitutional rights and indicated to the police officers that he wished to remain silent the police continued to interrogate the defendant.
LSA-Const. Art. I, § 13 requires that any person arrested or detained in connection with the investigation or commission of any offense must be advised fully of the reasons for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to assistance of counsel, and, if indigent, his right to court appointed counsel. By adoption of this provision, *165 Louisiana enhanced and incorporated the protection provided for accused persons under the Fifth Amendment to the United States Constitution announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). State v. Rodrigue, 409 So.2d 556 (La.1982).
When the accused invokes his right to silence, the police must scrupulously honor the right to cut off questioning by the person in custody. The courts must look to the facts of each case and the precepts underlying Miranda to determine if the police engaged in conduct in obtaining a confession which destroyed the accused's confidence in his right to cut off questioning. Miranda v. Arizona, supra; Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); State v. Loyd, 425 So.2d 710 (La.1982).
Additionally, before a confession or inculpatory statement can be introduced into evidence, the state has the burden of affirmatively proving beyond a reasonable doubt that the statement was given freely and voluntarily. The defendant must have given the statement free from the influence of duress, fear, threats, inducements, or promises. LSA-R.S. 15:451; State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Hall, 434 So.2d 517 (La.App. 2d Cir. 1983).
Detectives Zambie and Peel of the Monroe Police Department testified that when the defendant was brought into the detective's squad room of the Monroe Police Department the defendant was advised of his constitutional rights and the defendant indicated that he understood those rights. The defendant refused to sign a waiver of rights form but waived his right to remain silent and answered questions asked by Detective Zambie and Detective Peel. Both Detectives Zambie and Peel testified that after approximately 20 to 30 minutes of questioning, the defendant invoked his right to remain silent. Both detectives testified that at that point all questioning of the defendant ceased.
No evidence was presented to indicate that the police officers continued questioning the defendant after he invoked his right to remain silent nor is there any evidence that any threats, promises, or inducements were made to the defendant. This assignment of error is without merit.
DECREE
Finding no merit to defendant's assignments of error, the conviction and sentence are affirmed.
AFFIRMED.