494 So.2d 1357 (1986)
STATE of Louisiana, Appellee,
v.
Roy Dewayne COLVIN, Appellant.
No. 18230-KW.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1986.
Writ Denied November 21, 1986.
*1358 Hunter, Scott, Blue, Johnson & Ross by Robert C. Johnson, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., James Allan Norris, Jr., Dist. Atty., Michael Jedynak, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, C.J., and SEXTON and NORRIS, JJ.
HALL, Chief Judge.
The defendant, Roy Dewayne Colvin, is charged by bill of information with armed robbery in violation of LSA-R.S. 14:64. Defendant filed a motion to suppress evidence and statements which was denied by the trial court. This court granted defendant's application for supervisory writs in order to address the following issues presented therein: (1) whether there was reasonable suspicion to stop defendant and probable cause to arrest defendant; (2) whether the trial court erred in failing to take evidence and rule on the admissibility of statements made by defendant; (3) whether the search of defendant's car was valid; and (4) whether the identification procedure used resulted in a likelihood of irreparable mistaken identification.
Finding no merit to defendant's arguments, we recall the writ previously granted and affirm the trial court's ruling.

FACTS
Around 11:30 p.m. on January 6, 1986, two black males drove into the parking lot of a Stop-N-Go convenience store. The passenger went in and asked if the pay phone worked. Richard Brasher, the only employee present at the time, informed him that the phone did work. The passenger went outside to the phone, then went to the car and back to the phone before leaving with the driver. Moments later, Mr. Brasher went outside to sweep the sidewalk. The same two men returned to the store and the passenger asked Mr. Brasher if he had change for a dollar for the pay phone. As he started to go into the store, Mr. Brasher heard the driver open his door and ask a question. Being unable to understand the driver, Mr. Brasher walked to the door of the car. The driver told Mr. Brasher to walk down the side of the building or he would blow his brains out. Thinking the driver had a gun, Mr. Brasher walked down the side of the store as the passenger went into the store. When the two men drove away, Mr. Brasher returned to the store and called the police.
Officer Jerry Riley, an investigator with the Ouachita Parish Sheriff's Department, responded to Mr. Brasher's call reporting the robbery. He arrived at the Stop-N-Go at approximately 11:49 p.m. and interviewed Mr. Brasher. Mr. Brasher described the car as a new, dark blue Camaro but was unable to give a license plate number. He described the driver of the car as a black male in his early twenties with a short haircut wearing dark colored clothing and the passenger as a black male in his early twenties with a medium-sized afro hairstyle and a small mustache wearing brown clothing. Based on this information, a "be on the look-out" for the armed robbers was dispatched by the Ouachita Parish Sheriff's Department.
At the same time he received the bulletin, Officer Gary Telano of the Monroe Police Department spotted two black males in a vehicle matching the description given. Officer Telano followed the vehicle for about a mile to a mile and a half during which time he observed the vehicle run two stop signs, speed, and drive in the middle of the road before pulling into a residential driveway. En route to this residence, Officer Telano observed the passenger throw something out of the window.
*1359 Officer Telano exited his car with his service revolver pulled and pointed at both suspects and told the driver, later identified as defendant, to exit the vehicle. The passenger was already out of the car. Officer Telano testified that while advising defendant of his Miranda rights, he smelled alcohol on defendant's breath. After back up units arrived, defendant was arrested for negligent operation of a vehicle and possible DWI. Officer Telano handcuffed and placed defendant in the patrol car and then took him to the Monroe Police Department where two field sobriety tests and two PEI exams were administered. Defendant passed both field sobriety tests and both PEI exams registered 0%. Defendant was then given a citation for negligent operation of a vehicle. According to Officer Telano, it was city police procedure to arrest a suspect for negligent operation of a vehicle. In the case of a possible DWI, the policy was to administer the test for DWI at the police station, and if the results were negative, to issue the original citation for negligent operation rather than DWI.
Prior to stopping defendant, Officer Telano ran a license check on the vehicle which indicated that the vehicle had been leased. After arresting defendant for negligent operation and possible DWI, Officer Telano handcuffed him and put him in the patrol car. When asked about the vehicle, defendant responded that it was his girlfriend's and that she could pick it up, but he could not give her name or phone number. The lady at the house where the defendant's vehicle was parked said that she did not know either defendant or the passenger. Officer Telano testified that it was standard policy of the Monroe Police Department to do an inventory search and have a wrecker come and get the vehicle under circumstances such as these. A standard inventory form was used and a wrecker was called prior to the time the search was made. During the search, the police officers discovered a pistol and money in the vehicle.
Meanwhile at the Stop-N-Go, Officer Riley received a telephone call reporting that two suspects matching the "be on the look-out" description were being held at the Monroe Police Department. Officer Riley took Mr. Brasher to the Monroe Police Department where he remained in the vending machine room while Officer Riley called the assistant district attorney on duty to see if there were any problems with a one-on-one confrontation between Mr. Brasher and the suspects. The assistant district attorney indicated that there were none.
Officer Riley told Mr. Brasher that he wanted him to look at some people to see if they were the robbers. He also told Mr. Brasher to be positive before he informed him of his decision. The two entered the lobby of the police station; defendant was seated in a small room adjacent to the booking desk where he was being administered a PEI exam. This room had a glass window in it through which Mr. Brasher could observe defendant. At least one uniformed police officer and as many as two others were in the room with defendant. Officer Riley testified that defendant was brought out of the room and at that time Mr. Brasher positively identified defendant as the driver of the car. The identification was made after the witness observed defendant for three or four minutes.
Mr. Brasher testified that when he observed defendant in the room he could not be sure whether this man was the driver of the car. Mr. Brasher was then taken down the hall to a cell where he made a positive identification of another suspect as the passenger in the car. Mr. Brasher testified that defendant was then brought out of the room and he heard defendant talking to the officers. He recognized the voice as that of the driver of the car. Although he was not sure of defendant's physical identity as that of the driver, Mr. Brasher was sure of defendant's voice as that of the driver. At the motion to suppress hearing Mr. Brasher identified defendant as the person whose voice he had identified at the police station.
A motion to suppress was filed on January 28, 1986. The first hearing on the motion was on March 11, 1986 and dealt with information pertinent to the issue of *1360 reasonable suspicion to stop, the lack of Miranda warnings before statements were made by defendant, and the validity of the search of the car. On March 17, 1986, the hearing on the motion continued, this time with reference to the one-on-one identification procedure used by the police. The trial court denied defendant's motion to suppress on all grounds and refused to hear evidence on the voluntariness of the statements.

STOP AND ARREST
Defendant's first argument is that the trial court erred in ruling that the police officers had reasonable suspicion to stop him and probable cause to arrest him.
In State v. Smith, 433 So.2d 688 (La. 1983), the Louisiana Supreme Court stated the following regarding probable cause for an arrest and reasonable cause for an investigatory stop:
In interpreting the constitutional guarantees against unreasonable searches and seizures, two principles have evolved: before a police officer may make an investigatory stop, he must reasonably suspect that the person has committed or is about to commit a criminal offense, and before a police officer may arrest a person without a warrant, he must have probable cause to believe that the person has committed a criminal offense. State v. Davis, 359 So.2d 986 (La.1978).
Probable cause for an arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. LSA-C.Cr.P. art. 213; State v. Arceneaux, 425 So.2d 740 (La.1983); see Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); cf. Tex.C.Cr.P. art. 1.06; Brown v. State, 630 S.W.2d 322 (Tex.App.1982); Brewster v. State, 606 S.W.2d 325 (Tex.Cr. App.1980).
Reasonable cause for an investigatory stop is something less than probable cause to arrest, but requires that the police have sufficient knowledge of the totality of facts and circumstances to justify an infringement of an individual's right to be free of governmental interference. La.C.Cr.P. art. 215.1; State v. Chaney, 423 So.2d 1092 (La.1982); State v. Rodriguez, 396 So.2d 1312 (La.1981); cf. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Ebarb v. State, 598 S.W.2d 842 (Tex.Cr.App.1979); Christian v. State, 592 S.W.2d 625 (Tex. Cr.App.1980); cert. denied, 446 U.S. 984, 100 S.Ct. 2966, 64 L.Ed.2d 841 (1980).
Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Thomas, 349 So.2d 270 (La.1977); State v. Randolph, 337 So.2d 498 (La.1976).
Based on Officer Telano's observance of a vehicle and suspects matching the description given in an armed robbery bulletin and the erratic behavior of the suspects, there was reasonable suspicion that the occupants of the vehicle had been involved in the Stop-N-Go armed robbery. The investigatory stop was justified. LSA-C.Cr.P. Art. 215.1; State v. Smith, supra. Furthermore, the same facts indicate that probable cause existed for the arrest of defendant for armed robbery. LSA-C.Cr.P. Art. 213; State v. Smith, supra. Also, there was reasonable cause to stop and probable cause to arrest on the negligent operation violation, which was committed in the officer's presence while he was in close pursuit.

SUPPRESSION OF STATEMENTS
Defendant's next argument is that statements made by him should be suppressed because the state failed to prove that Miranda warnings were given before defendant made certain statements to the police officers and that the statements made by defendant were voluntary. At the motion to suppress hearing, the state gave notice that it did not intend to use at trial any statements given by either suspect. Defense counsel responded that this was fine with him. The trial judge found that a *1361 ruling on the issue of admissibility was unnecessary. The trial judge was correct in so doing because only the admissibility of statements intended to be introduced into evidence must be proved. LSA-R.S. 15:451.

SEARCH AND SEIZURE
Defendant also argues that the warrantless search of his vehicle was not a valid inventory search nor was it a valid search under the "automobile exception" to the warrant requirement.
The record establishes that the officers conducted a search of defendant's car without a warrant. Therefore, the burden of proof shifted to the state to affirmatively show that the search and seizure were justified under one of the well-recognized exceptions to the warrant requirements of U.S. Const. Amend. IV and La. Const. Art. I, § 5 (1974). State v. Crosby, 403 So.2d 1217 (La.1981); State v. Hatfield, 364 So.2d 578 (La.1978).
The officer who stopped defendant and searched the car justified the search as an inventory search, one of the well-recognized exceptions, and the trial court upheld the validity of the search. Whether the search was legal as a true inventory search is a close call under the circumstances of this case, it being apparent that the primary concern of the police officer was the armed robbery and the main purpose of the search was to look for evidence connected with the armed robbery. However, the search was permissible under the "automobile exception," another one of the well-recognized exceptions to the warrant requirement.
The Louisiana Supreme Court succinctly set forth the doctrine of the "automobile exception" as follows in State v. Tatum, 466 So.2d 29 (La.1985):
The "automobile exception" has recently been upheld in U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). There, the U.S. Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it, may conduct a warrantless search of the vehicle as thoroughly as a magistrate could authorize. The scope of the warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted, but rather, is defined by the object of the search and the places in which there is probable cause to believe it may be found. U.S. v. Ross, supra....
For constitutional purposes, there is no difference between on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. Carrol v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Ross, supra; State v. Chaney, 423 So.2d 1092 (La.1983).
Furthermore, prior Louisiana jurisprudence has held that a search warrant is not necessary where there is probable cause to search an automobile for contraband or evidence of a crime and there are exigent circumstances requiring an immediate search. State v. Chaney, supra; State v. Guzman, 362 So.2d 744 (La. 1978).
Exigent circumstances has been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." State v. Chaney, supra.
Probable cause to search the defendant's vehicle existed because the suspects and the vehicle matched the description given in an armed robbery bulletin and they were spotted in close proximity in time to the occurrence of the robbery. Exigent circumstances *1362 requiring that the police either seize and hold the vehicle before presenting the probable cause issue to a magistrate or carry out an immediate search without a warrant were present because although the car was parked in a private driveway, it was not the driveway of either occupant of the vehicle and it was accessible to anyone who might have reason to remove the car or to remove evidence from it. Under such circumstances, the contents of the car may have never been found again if it was necessary to obtain a warrant. The search of defendant's vehicle was a valid search under the "automobile exception."

IDENTIFICATION
Defendant's last argument is that the trial court erred in ruling that the identification procedure used was not conducive to irreparable misidentification.
A defendant attempting to suppress an identification must prove two things: (1) that the identification was "suggestive," and (2) that there was likelihood of misidentification in the identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983); State v. Evans, 485 So.2d 161, (La.App. 2d Cir.1986). If, under the first prong of the analysis, the court determines that the identification procedure was not impermissibly suggestive, the inquiry ends. If the court finds that the procedure used was suggestive, a separate inquiry must be made as to whether the suggestiveness created a substantial likelihood of irreparable misidentification. An identification will be admitted even though the confrontation procedure was suggestive if, under the totality of the circumstances, the identification is found to be reliable. Passman v. Blackburn, 652 F.2d 559 (5th Cir.1981); State v. Davis, 409 So.2d 268 (La.1982); State v. Dauzat, 364 So.2d 1000 (La.1978); State v. Clark, supra; State v. Evans, supra.
The factors to be considered in evaluating the reliability of an identification were enumerated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and reaffirmed in Manson v. Brathwaite, supra. They are the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification.
One-on-one identification procedures are not favored. State v. Davis, supra; State v. Newman, 283 So.2d 756 (La.1973); State v. McLeland, 456 So.2d 633 (La. App. 2d Cir.1984); State v. Clark, supra; State v. Evans, supra. The practice of allowing a victim to view an individual suspect singularly is not to be condoned nor is it to be taken lightly because of the potential for misidentification.
Mr. Brasher testified that he was unable to make a positive identification of defendant as the driver "by his looks." His identification of defendant was made only after hearing his voice. Although the court's decision in Manson v. Brathwaite involved a visual identification of Brathwaite, the same test and factors, modified to relate to voice, should be applied to determine the admissibility of an identification by voice.
The procedure used was impermissibly suggestive due to the one-on-one contact with the suspect. Therefore, we must examine the appropriate factors to determine the likelihood of misidentification. The opportunity of the witness to hear, rather than view, the criminal at the time of the crime is the first factor to consider. Although Mr. Brasher initially had difficulty understanding the driver, he went over to the driver's opened car door where the driver spoke to him again. This presented him with a good opportunity to listen to the driver. Secondly, Mr. Brasher's attention was directed to the driver for approximately thirty seconds during which time he was being directly threatened as opposed to being an uninvolved bystander. Thirdly, although there was no prior description of the driver's voice given by Mr. Brasher, his description of the driver as a *1363 young black male dressed in dark clothing fits the defendant. As to the fourth factor, Mr. Brasher was positive that defendant's voice was that of the driver of the car. Lastly, the time between the robbery and the confrontation was only one to one and a half hours. Under these circumstances, the suggestiveness in the identification procedure was outweighed by Mr. Brasher's ability to make an accurate identification. As found by the trial court, the identification is reliable, and the likelihood of irreparable misidentification is not substantial enough to require suppression. Therefore, the identification by voice is admissible as evidence to be considered and weighed by the jury.

DECREE
Accordingly, the writ is recalled, the ruling of the trial court on the motion to suppress is affirmed, and the case is remanded to the district court for further proceedings.
WRIT RECALLED, DENIAL OF MOTION TO SUPPRESS AFFIRMED, AND CASE REMANDED.